```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
_____
                                   )
ESTATE OF PAUL SNIADACH, et al.    )   No. 20-CV-30115
                                   )
         Plaintiffs                )
v.                                 )
                                   )
BENNETT WALSH, et al.              )
                                   )
         Defendants                )
_____)
```

AFFIDAVIT OF DAVID ROSENBERG
IN SUPPORT OF
CLASS COUNSEL'S FEE PETITION

I, David Rosenberg, swear under the pains and penalties of perjury that the following is true to the best of my information and belief:

1. I am currently the Lee S. Kreindler Professor of Law Emeritus at Harvard Law School, a chair which is endowed by the family of one of the pioneers in tort law.[1]

2. I joined the Harvard faculty part-time in 1971 and full-time in 1979, after graduating from New York University Law School in 1967.

3. At Harvard Law School, I study, teach and write on a variety of subjects, including constitutional law, labor law, criminal law, federal courts and complex litigation.  My particular emphasis is in the field of torts.

---

[1] My Curriculum Vitae is attached as Exhibit 1.

1

4. My academic work includes pioneering contributions to understanding and effectuating the use of class actions as a means of law enforcement aimed at deterring and redressing violations of constitutional, statutory, regulatory, and common law. I have also focused on related matters, including the nature, purpose and criteria for court awarded fees in such cases. I created, and for over forty years taught, the first course in the nation devoted to the study of complex and collective litigation of mass tort (injury) cases.

5. My practice experience includes 12 years of full-time complex federal civil litigation of constitutional and mass tort cases, beginning as an associate (1967-1971) in the leading civil rights and liberties firm, Rabinowitz and Boudin in New York, and then, after moving to Massachusetts, as a partner in Rosenberg and Baker (1974-1979). Mainly my civil litigation work was on the plaintiffs' side, involving research and development of case theory; claim evaluation; planning and organizing the litigation; writing briefs, pleadings, discovery, and preliminary injunction and other motions; and presenting oral argument. My experience strongly influenced my subsequent scholarly work, see e.g., David Rosenberg, <u>The Causal Connection in Mass Exposure Cases: A "Public Law" Vision of the Tort System</u>, 97 HARV. L. REV. 849 (1984).

6. My work has included the development of a policy-

oriented approach to complex litigation, particularly class actions, in order to create a new, socially responsible design of the civil liability system. I have a current book project in progress: "<u>Socially Responsible Adjudication of Mass Injury Cases: Doing Individual Justice by Collective Means</u>".

7.  In both my academic and litigation work, I have developed expert knowledge about the theory, policy, law and practice of federal complex class action litigation and fair compensation for attorney fees in common fund cases, such as the case here.

8.  I have frequently been retained by private law firms and parties and by government agencies – with plaintiff, defendant, and third-party interests in pending or contemplated complex litigation – to provide expert independent advice, reports, and testimony regarding, among other matters, evaluation of case merits and litigation strategies, certification of class actions, the reasonableness of class action settlements, and the reasonableness of class counsel fee requests.

9.  I reviewed the above-entitled case at an early stage of the litigation at the request of Attorney Thomas Lesser, a former student of mine.

10. I initially reviewed the Amended Complaint filed in this action, and then the Term Sheet and Class Counsel's Motion

3

for Final Approval of the Class Settlement Agreement.  I have now reviewed Class Counsel's Fee Petition.

11.  It was clear to me during my initial review of the case that the plaintiffs would face serious difficulties in prevailing on the merits of their claims, primarily due to (1) the anticipated dispositive motions in which the defendants would assert that they are entitled to qualified immunity, and (2) the difficulties of proving at trial that the defendants' conduct was (a) sufficiently severe to constitute a deprivation of the veterans' constitutional rights, and (b) the cause of the veterans' suffering.

12.  In addition, it was clear the plaintiffs' likelihood of recovering any judgment received at trial would be fraught with roadblocks, due to the nature of the Commonwealth of Massachusetts' indemnification statute.

13.  Put another way, filing the lawsuit to attempt to hold the Commonwealth responsible for the egregious care the veterans received was commendable as a public service, but it was not clear to me that it made good economic sense.

14.  Nonetheless, despite those barriers, Class Counsel has secured a common fund settlement that, based on my earlier analysis, is very favorable to the members of Settlement Class A and Settlement Class B.  The awards are significantly higher than the amounts at which I had thought it likely the case would

settle, given the risky nature of the litigation. The high settlement amounts agreed to by the Commonwealth in the Settlement Agreement could only have come as a product of determined excellent advocacy by Class Counsel.

15. I have worked on and reviewed many class action common fund settlements.

16. I have also reviewed, studied and written about how attorneys are, and should be awarded fees in common fund cases.

17. In the First Circuit, the preferred method for compensating Class Counsel in a common fund case, such as the one before the Court, is the "percentage of fund" method. I strongly believe this is the proper method that should be used to calculate attorney fees in this case for the reasons I set forth below.

18. In the "percentage of fund" method, Class Counsel receives a percentage of the total settlement amounts (called the common fund) that the defendant is required to pay in order to settle the case (the common fund includes both the agreed-upon payments to the claimant(s) and attorney fees).

19. Using a percentage of fund method to calculate attorney fees in a case of this nature, in contrast to the lodestar method, is preferable for many reasons.

First, it encourages expeditious resolution of the dispute, not the accumulation of billable hours. If counsel's fees are

determined based on an hourly rate, there is an incentive to (i) bill as many hours as possible, and (ii) not settle the lawsuit at an early stage.  A monograph published by the Federal Judicial Court notes that, "If fees are based on the lodestar, plaintiff's counsel has no incentive to settle the case early – counsel continues to rack up fees by litigating the case."  Alan Hirsch and Diane Sheehey, AWARDING ATTORNEYS'FEES AND MANAGING FEE LITIGATION 73 (2d ed.2005).

Second, if the percentage of fund method is used, the case will be decided in accordance with marketplace factors.  A percentage of the fund award, in contrast to the lodestar method, encourages counsel to settle the case for as much as possible since their fee bears a relationship to the amount of the settlement. This alignment of class counsel and class interest in maximizing aggregate recovery is recognized as the hallmark and greatest advantage of the percentage over lodestar fee. From the perspective of social resources, the percentage fee also has the advantage of relative administrative efficiency, notably compared to the lodestar requirement that courts conduct the complex, costly and often quixotic task of line-item auditing class counsel's billing records.

20.  Applying the percentage of fund method in this case has the further and perhaps most important virtue in powerfully serving the deterrence objectives of law enforcement by taxing

the wrongdoer for the full burden and expense incurred by class counsel to vindicate class members' constitutional rights.

21. In my opinion, the percentage of fund approach constitutes good public policy, in that it both (a) discourages bad behavior, and (b) encourages the undertaking of difficult lawsuits, through fair, but robust attorney fee awards.

22. In this case, were the Court to reduce the agreed-upon fee negotiated with the Commonwealth, it would be a disincentive for the Commonwealth in the future to change behavior that might violate 42 U.S.C. § 1983, as well as a disincentive for counsel to take on difficult 42 U.S.C. § 1983 cases.

23. Of course, any attorney fee must be reasonable. But in this case, Class Counsel seeks payment of 19.8% of the total settlement fund, which is on the lowest end of fees commonly awarded to Class Counsel in common fund class actions in the First Circuit, as well as in other circuits throughout the country.

24. The benchmark for attorney fees in such cases is generally considered to be 25% of the common fund, which is significantly higher than the fees requested here.

25. In addition, the <u>Goldberger</u> factors, as identified in <u>Harden Mfg. v. Pfizer, Inc (In re Neurontin Mktg. & Sales Practices Litig.)</u>, 58 F. Supp. 3d 167, 170, 172 (D. Mass. 2014), strongly support a finding that the fee sought by Class Counsel

in this case is reasonable.

    a. The agreed upon awards to the claimants are more than what would have been expected, given the difficulties of prevailing and collecting any judgement awarded at trial.

    b. The skill, experience, and efficiency of Class Counsel is obvious given the result. Furthermore, I personally know attorney Lesser to be an extremely capable attorney willing to take on difficult cases to further the public interest.

    c. The complexity and duration of the litigation support the requested fee. The case presented major legal issues including: (1) whether the plaintiffs could survive a qualified immunity challenge, (2) whether the plaintiffs could prove that the defendants' conduct was sufficiently severe to rise to the level of a constitutional deprivation, and (3) whether the plaintiffs could prove that the defendants' conduct caused their injuries. The law is far from clear how those issues might have been decided, and whatever action this Court might take, there is no assurance as to how the plaintiffs would fare on appeal. Meanwhile, the duration of the litigation, only twenty-two months from filing to settlement, is

       impressively short, particularly given the limitations imposed by the COVID-19 pandemic. The speedy resolution of this case has to have been a relief for the families of the deceased veterans, affording them some modicum of justice and finality. Were the case not to settle, bringing the case to trial and litigating any appeal could easily have exceeded five years and the lifetimes of many of the surviving Class Members. Meanwhile, the on-going litigation would have opened up the wounds of the tragedy that occurred at the Soldiers' Home time and time again as the Commonwealth disclaimed responsibility.

  d. Most importantly, the public interest supports a full attorneys' fee. First, it will encourage counsel to bring difficult cases where the Commonwealth has mistreated those in its care. Second, and equally, if not more importantly, an award of full attorney fees serves the critical public policy goal of deterring future wrongdoing.

26. The case before the Court is of massive import, both to the veterans and their families, as well as to the state-wide community that has followed the case since its filing.

27. The parties bargained here and agreed upon a fee, which is unopposed by the Commonwealth or any Class Members. In

such a case, in my opinion, should this Court not award the bargained for fees, as agreed to in the Settlement Agreement, it would create significant uncertainty for parties attempting to negotiate the resolution of future common fund cases.

28. This is particularly true where a reduction in the negotiated attorney fee sought would not benefit the Class Members. It would be ironic that if this Court reduced the requested fees, those reduced funds would revert to, and be a windfall for, the Commonwealth, which has agreed to, and is not opposing, the requested fees of $11,512,500.

Date: November 2, 2022            */s/ David Rosenberg*
                                  _____
                                  David Rosenberg

CERTIFICATE OF SERVICE

    I, Michael Aleo, hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Date: November 2, 2022　　　　*/s/ Michael Aleo*

EXHIBIT 1

Michael David Rosenberg
Lee S. Kreindler Professor of Law, Emeritus
1575 Massachusetts Ave. (Hauser Hall 500)
Cambridge MA 02138
Email MDR@law.harvard.edu

**Bar Membership**: Massachusetts and New York, federal and state; Supreme Court of the United States

**Practice and Teaching Specialties**: tort law, labor law, constitutional law, federal jurisdiction, legal profession, civil procedure, and complex federal litigation

**Education**: New York University School of Law, N.Y.C., NY (J.D. 1967); American University, Washington D.C. (B.A. 1964)

**Professional Experience**:

*Employment*: Associate, Rabinowitz, Boudin & Standard, N.Y.C., NY (1967-1971); Teaching Fellow, Harvard Law School (1971-1974); Single legal practice, Boston, MA (1971-1974); Lecturer, Harvard Law School (1974-1979); Partner, Rosenberg, Baker & Fine, Cambridge, MA (1974-1979); Assistant Professor, Harvard Law School (1979-1983); Lee S. Professor, Harvard Law School 1983-2010; Lee S. Kriendler Professor, Harvard Law School (2006-2020; Lee S. Kriendler Professor, Harvard Law School, Emeritus (2020 to present ).

*Representative practice and expert consulting work*:

Cases—Bond v. Floyd, 385 U.S. 116 (1967);[1] O'Callahan v. Parker, 395 U.S. 258 (1969); United States v. Spock, 416 F.2d 165 (1st Cir. 1969); United States v. Ellsberg (1971); In re Stolar, 401 U.S. 23 (1971); Law Students Civil Rights Research Council v. Wadmond, 401 U.S. 154 (1971); Mandel v. Mitchell, 408 U.S. 753 (1972); Robison v. Johnson, 415 U.S. 361 (1974); Commonwealth v. Edelin, 359 N.E.2d 4 (Mass. 1976); Payton v. Abbott Laboratories, 83 F.R.D. 382 (D.Mass. 1979); National Coordinating Counsel for Plaintiffs in the DES litigation; Sindell v. Abbott Laboratories, 607 P.2d 924 (Cal. 1980); Richmond Newspapers v. Virginia, 448 U.S. 555 (1980); Grendel's Den v. Larkin, 459 U.S. 116 (1982); Hawaii Housing Authority v. Midkiff, 463 U.S. 1323 (1982); Cipollone v. Liggett Group, 112 S.Ct. 2608 (1992); Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S.Ct. 2786 (1992)

Expert consultant or witness—Walker v. Liggett Group, Inc. Civ. Act. No. 2:97-0102 (S.D. W. Va. (1997); Cox v. Shell Oil Company (Chan. Ct., Tenn. 1995); Price v. Ciba-Geigy Corporation (S.D. Ala. 1994); In the Matter of the Exxon Valdez (FERC 1994); Georgine v. Amchem Products, Inc., 157 F.R.D. 246 (E.D. Pa. 1994), and in Amchem Products, Inc. v. Windsor, 117 S.Ct. 2231 (1997); Bowling v. Pfizer, Inc., 143 F.R.D. 141

---

[1] Pre-bar admission.

(S.D. Ohio 1992); Manville Trust Reorganization (E.D.N.Y., AFL-CIO panel); Dairyland Ins. Co. v. Pfizer, Inc., Case No. 718166 (Super. Ct. Cal. 1993)

*Books, journal articles, and other scholarly publications:*

On Torts, Civil Liability and Procedure Generally, Insurance, Risk Management, Law Enforcement, and Related Topics—

40. (with Anne Brown, Jaehyun Oh, Benjamin Taylor) A Plan for Reforming Federal Pleading, Discovery, and Pretrial Merits Review, 71 Vand. L. Rev. 2059 (2018)

39. (with Kathryn Spier) Incentives to Invest in Litigation and the Superiority of the Class Action, 6 J. Leg. Analysis 305 (2014)

38. (with Kathryn Spier) On Structural Bias in the Litigation of Common Question Claims, available at http://ssrn.com/abstract=1950196

37. A Sampling-Based System of Civil Liability, 15 Theoretical Inquiries in Law 635 (2014)

36. (with David Korn) Concepcion's Pro-defendant Biasing of the Arbitration Process: The Class Counsel Solution, 46 U. Mich. J. L. Reform 1151 (2013)

35. (with Bruce Hay, Christopher Rendall-Jackson) Litigating BP's Contribution Claims in Publicly Subsidized Courts: Should Contracting Parties Pay Their Own Way?, 64 Vanderbilt L. Rev. 1919 (2011)

34. (with Kenneth Reinker) Improve Medical Malpractice Law by Letting Health Care Insurers Take Charge, 39 J. L. Med. & Ethics 3 (2011)

33. (with Luke McCloud) A Solution to the Choice-of-Law Problem of Differing State Laws in Class Actions: Average Law, 79 G.W. L. Rev. 374 (2011)

32. Collectivizing Private Enforcement of Antitrust Law: A Reform Proposal for the United States and Possibly Beyond, 3 Global Competition Litigation Review 11 (2010)

31. (with Jaime Dodge) Collective Adjudication of Financial Services and Other Cross-Border Mass Injury Cases, 2010 European Journal of Consumer Law, pp. 141-177

30. (with Kenneth S. Reinker) Improving Medical Malpractice Liability by Allowing Insurers in Charge, 36 J. Legal Studies 261 (2007)

29. (with Robert J. Jackson, Jr.) A New Model of Administrative Enforcement, 93 Va. L. Rev. 1983 (2007)

28. The Judicial Posner on Negligence Versus Strict Liability: Indiana Harbor Belt Railroad Co. v. American Cyanamid Co., 120 Harv. L. Rev. 1210 (2007)

27. (with James Sullivan) Coordinating Private Class Action and Public Agency Enforcement of Antitrust Law, 2 J. Competition L. & Econ. 159 (2006) (also published in Canadian Class Action Review (2006); and Litigating Conspiracy: An Analysis of Competition Class Actions (Steven Pitel & Tom Telfer eds. 2006))

26. (with Steven Shavell), A Solution to the Problem of Nuisance Suits: The Option to Have the Court Bar Settlement, 26 Internat. Rev. L. & Econ. 42 (2006)

25. (with Steven Shavell) A Simple Proposal to Halve Litigation Costs in the United States, 91 VA. L. REV. 1721 (2005)

24. (with John Scanlon), Class Actions in Mississippi: To Be or Not to B(3), 26 Miss. College L. Rev. 153 (2005)

23. (with Randy Kozel), Solving the Nuisance-Value Settlement Problem: Mandatory Summary Judgment, 90 Va. L. Rev. 1849 (2004)

22. (with Charles Fried) MAKING TORT LAW: WHAT SHOULD BE DONE AND WHO SHOULD DO IT (2003)

21. Adding a Second Opt-Out to Rule 23(b)(3) Class Action: Cost Without Benefit, (2003 U. Chi. Legal Forum 19)

20. (published remarks) Symposium: Judge Jack B. Weinstein, Tort Litigation, and the Public Good, 12 J. Law & Pub. Policy 149 (2003)

19. Decoupling Deterrence and Compensation Functions in Mass Tort Class Actions for Future Loss, 88 Va. L. Rev. 1871 (2002)

18. Mandatory-Litigation Class Action: The Only Option for Mass Tort Cases, 115 Harv. L. Rev. 831 (2002);

17. The Regulatory Advantage of Mass Tort Class Action, in REGULATION BY LITIGATION (W. Kip Viscusi ed., 2002);

16. Mass Tort Class Action: A Social Welfare Perspective (Boston Bar Association, CLE 2001)

15. (published remarks) Symposium: Tort Liability, the Structural Constitution, and the States, 31 Seton Hall L. Rev. 563 (2001)

14. Mass Tort Class Actions: What Defendants Have and Plaintiffs Don't, 37 Harv. J. Legis. 393 (2000)

13. (with Bruce Hay), Sweetheart and Blackmail Settlements in Class Actions: Reality and Remedy, 75 Notre Dame L. Rev. 1377 (2000)

12. Individual Justice and Risk-Based Claims in Mass Exposure Cases, 71 N.Y.U. L.Rev. 210 (1996)

11. THE HIDDEN HOLMES: HIS THEORY OF TORTS IN HISTORY (Harvard University Press, 1995)

10. Mass Torts and Collective Judicial Procedure, in ALI Reporters' Study, ENTERPRISE RESPONSIBILITY FOR PERSONAL INJURY: APPROACHES TO LEGAL AND INSTITUTIONAL CHANGE (1991)

9. Damage Scheduling in Mass Exposure Cases, 1 Courts, Health Science, and the Law 335 (1991)

8. Of End Games and Openings in Mass Tort Cases: lessons from a Special Master, 69 B.U. L. Rev. 695 (1989)

7. Class Actions for Mass Torts: Doing Individual Justice by Collective Means, 62 Ind.L.J.561 (1987)

6. Toxic Tort Crisis, 24 Houston L. Rev. 183 (1987)

5. Joint and Several Liability for Toxic Torts, 15 J. Hazardous Mat. 219 (1987)

4. The Uncertainties of Assigned Shares Tort Compensation: What We Don't Know Can Hurt Us, 6 Risk Analysis 363 (1986)

3. Book Review, The Dusting of America: A Story of Asbestos -- Carnage, Cover-up and Litigation, 99 Harv. L. Rev. 1693 (1986)

2. (with Steven Shavell), A Model in Which Suits are Brought for their Nuisance Value, 5 Int. Rev. L. & Eco. 3 (1985)

1. The Causal Connection in Mass Exposure Cases: A "Public Law" Vision of the Tort System, 97 Harv. L. Rev. 849 (1984)

On other subjects—

7. (with Adeyemi Adediran) Strengthening the Power of Healthcare Insurers to Regulate Medical Device Risk (forthcoming in I. Glenn Cohen et al., The Future of Medical Device Regulation: Innovation and Protection. Cambridge University Press, 2022)

6. (with Andrew English and Huaou Yan) A New Regulatory Function for E-prescriptions: Linking FDA to Physicians and Patient Records, in FDA in the 21st Century: The Challenges or Regulating Drugs and New Technologies (H. Lynch & I. G. Cohen eds., Columbia U. Press 2015)

5. "The Path Not Taken," in *The Path of the Law* After One Hundred Years, 110 Harv. L.Rev. 1044 (1997)

4. "Litigating Civil Rights and Liberties in the United States: A Vital but Flawed Enterprise," in LITIGATING THE VALUES OF A NATION: THE CANADIAN CHARTER OF RIGHTS AND FREEDOMS, 357 (J. Weiler & R. Elliot eds., 1986)

3. (with C. Nesson & J. Travaline), DISTRICT COURT TRIAL MANUAL, MASSACHUSETTS DEFENDERS COMMITTEE (1975)

2. A Form Book for Enjoining Undeclared Wars, (Book Review), 8 Harv. Civ. Rts.-Civ. Lib. L. Rev. 223 (1973)

1. Constitutional Limitations on the Process of Admission to the Bar, 23 N.Y.U. Intramural L. Rev. 135 (1968)

*Work in progress and under investigation:*

29. Book project: To Increase the Social Value of Lawyers, Train Law Students to Think as Scientists

28. Book project: Socially Responsible Adjudication of Mass Injury Cases: Doing Individual Justice by Collective Means

27. The "Private Law" Conception, and Its Intellectual Incoherence, Moral Perversity, and Socially Pathological Consequences

26. No Place in Legal Policy Making for Recognition of Deontic "Autonomy" and "Privacy Right"-Based Arguments Against Vaccine Mandates, Disclosure of Patient Medical Information, and Other State Interventions Necessary to Protect and Improve Public Health and Well-being

25. Federal Financing of FDA Approved Clinical Trials to Reduce Social Cost of Prescription Drug R&D

24. Reappraisal of Comparative Advantage of Percentage versus Lodestar contingent Fees

23. Optimal Deterrence and Reform of the Rule of Joint and Several Liability

22. Why Clinical Legal Education is Neither Clinical Nor Education

21. Should Plaintiffs or Plaintiff-attorneys Have Final Say over Trial vs Settlement

20. (with Yuqing Cui) On Percentage vs Lodestar; Splitting, Sequencing, and Structuring Payouts; and Other Court-awarded Fee Problems in Class and Consolidated Actions

19. (with Steven Shavell), Against the Predominance of the Negligence Rule Over Strict Liability in the Law of Torts

18. (with Chibane), Let the Public Share in the Profits from Medical Research it Funds

17. Doing Individual Justice by Collective Means: General Theory and Workable Design for Comprehensive Reform of the Civil Liability System

16. How Best to Enhance the Insurance Value of Civil Liability Damages

15. Financing and Financial Organization of Plaintiff-side in Class and Consolidated Actions: Comparative Advantage of Lodestar versus Percentage Contingent Fees, Ex Post vs. Subrogation and other Ex Ante Claim Assignments, and Auctioning Fee Awards versus Full Recoveries

14. Auctioning Tradable Discovery Rights: A Market Approach to Lowering Litigation Cost

13. To Offset Medicare and Medicaid Costs, Should NIH Negotiate with Funding Recipients for Royalties on Sales of Patents and Products Developed from Federal Research Grants

12. Book Project: Doing Individual Justice by Collective Means: A General Theory and Model for Collectivized Adjudication of Mass Tort (and other Civil Liability Claims against Business and Government)

11. Ex ante versus Ex Post Compensation in Civil Liability Cases

10. Optimizing Inter-generational Welfare-transfers Through the Market in Bond Financing

9. Real Contract Cases in Tort: How Courts Should Recognize and Resolve Them

8. Private and Public Financing of Election Campaigns By Means of anonymous Individual Contributions

7. "Search Me": Selective Waiver of Fourth Amendment Restraints on National Security Investigations

6. On Mandatory Unionization

5. (with Andrew Oldham) The Scalar Dimension of Law Enforcement

4. Mass Production Goods, Torts, and Justice; The Problem of Opt-Out (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=354120, posted 2003)

3. Avoiding Duplicative Litigation of Similar Claims: The Superiority of Class Action vs. Collateral Estoppel vs. Standard Claims Market (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=354100, posted 2002)

2. (with Bruce Hay), THE INDIVIDUAL JUSTICE OF AVERAGING (Harvard John M. Olin Discussion Paper Series No. 285, 2000) available at: http://ssrn.com/abstract=11336;

1. What Distributional Difference Can Rule Changes Make? (1989).